IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VERNON R. STOVER                                                             PLAINTIFF

v.                      Civil No. 04-5280

SHERIFF KEITH FERGUSON, CAPTAIN
HUNTER PETRAY, MAJOR GENE DRAKE,
LT. PAUL CARTER, DR. MULLINS, and
NURSE MCDONALD                                     DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Vernon R. Stover brings this pro se civil rights action under 42 U.S.C. § 1983, contending his civil rights were violated while he was detained in the Benton County Detention Center.

On September 5, 2005, the defendants filed a summary judgment motion (Docs. 38-41), as directed by the court (Doc. 22). By order entered on October 7, 2005, Stover was directed to complete, sign, date, and return an attached questionnaire that would serve as his response to the defendants' motion for summary judgment. (Doc. 42.) On October 19, 2005, Stover's response to the defendants' summary judgment motion was filed. (Doc. 22.) The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

### I. Background

On October 8, 2004, Stover was booked into the Benton County Detention Center (BCDC), and at that time, he completed a Medical Intake Form, indicating that he had a colostomy bag. He signed the BCDC Detainee Rules at that time. (Doc. 43 at ¶¶ 1-2.) On October 10, 2004, he submitted a written request to speak with the nurse about his colostomy

bag. (Doc. 43 at ¶ 4.) He told Nurse Sue McDonald on October 11, 2004, that he only had one colostomy bag remaining and she told him that she would try to locate more colostomy bags for him. (Doc. 43 at ¶ 5.) On October 13, 2004, Stover filed a medical request, indicating that he had been given the incorrect-sized colostomy bags. He was given permission to see the nurse. On October 15, 2004, Stover saw Nurse McDonald about his colostomy bags and was given the correct-sized bags at that time. (Doc. 43 at ¶ 10.)

On October 18, 2004, Stover filed a grievance requesting that he be permitted to use the bathroom in the booking area to clean out his colostomy bag. On October 20, 2004, Lt. Paul Carter responded that Stover would be brought to the booking area to clean out his bag. Stover contends that he was permitted to use the booking area bathroom once, and that the remainder of the time he had to clean out his colostomy bag in his cell. This happened after he was given permission in writing to use the booking-area bathroom. (Doc. 43 at ¶ 12.)

On October 12, 2004, Stover requested to be moved from administrative segregation to the general population. On a previous incarceration at the BCDC, he had requested confinement in administrative segregation because another inmate was attempting to fight with Stover. He was immediately placed in administrative segregation when booked into BCDC on October 8, 2004. (Doc. 43 at ¶¶ 6-7.) Stover was told to explain why what circumstances changed that warranted his move from administrative segregation to the general population. (Doc. 43 at ¶ 8.) On October 15, 2004, Stover filed a request to be moved to general population, explaining that the inmates in administrative segregation frequently flooded the floor of that pod. (Doc. 43 at ¶ 11.) On October 19, 2004, he filed another request to be moved to general population. He told to Lt. Carter that he wanted to be in general population because he was tired of being ignored

AO72A
(Rev. 8/82)

when he wanted to clean out his colostomy bag and that at least three times the bag had leaked on him. Although defendants contend that Stover agreed to stay in administrative segregation, Stover disagrees with this contention. On October 28, 2004, Stover again requested to be moved to general population, this time he claims that officials turned off the water in the cells every day after supper and that they did not answer his request to be taken to the booking area to clean out his colostomy bag. On October 29, he filed a request to be moved to general population claiming that his back was hurting because he could not move around the pod. Lt. Carter told plaintiff that he could do exercises other than walking around the pod for his back and that he would remain on protective custody. Stover contends that he had no problems with any other inmate at that time and thus there was no reason for him to remain on administrative segregation or protective custody. (Doc. 43 at ¶¶ 13-18.)

On November 3, 2004, Stover filed a grievance stating the guards were giving him trouble about when he could clean out his colostomy bag. In a November 5, 2004 grievance, Stover stated that he was being "put off" about cleaning his bag and that when he would try to clean it, the deputies would usually forget about him. He also stated that he could not flush the toilet when the water was shut off every night. Captain Petray told Stover that he would look into the matter. (Doc. 43 at ¶¶ 19-21.)

On November 19, 2004, Stover was placed on a 10-day lock down for keeping a dirty cell and having extra items in his cell. Stover contends his cell was dirty because the deputies would not provide cleaning supplies and that the only extra item he had in his cell was a small amount of triple antibiotic cream that Nurse McDonald had given him. (Doc. 43 at ¶ 22.)

On November 28, 2004, Stover threatened through a grievance that if the deputies did

-3-

AO72A
(Rev. 8/82)

not stop turning off the water to his pod that he was going to raise a lot of hell about the unsanitary and unhealthy living conditions. On December 3, 2004, Captain Petray told Stover that the water was being controlled because inmates on the pod flooded their cells and that the inmates were told when the water was turned on. Stover states that the intercom speakers in the cells did not work properly, so he could not hear the announcement. When he would hear a toilet flush in another cell, he would rush to his to see if it would flush, too. (Doc. 43 at ¶¶ 23-25.)

From October 13, 2004 until January 7, 2005, various Benton County Detention Center Medical Sheets were completed for plaintiff concerning his colostomy bag. Instructions for changing the colostomy bag and the flange varied from changing the bag every other day to changing the bag and flange every fourth or fifth day. Also, sometimes instructions were given that Stover was to be permitted to change and bag in the booking area bathroom, while at other times, instructions were given that he could change the bag in his cell. Stover claims that he was given the "run around" about the when he was permitted to change the bag and flange, and that the deputies did not bother to tell him if the schedule had changed. (Doc. 43 at ¶¶ 32.)

Stover agrees that he is suing the defendants in their official capacities only. (Doc. 43 at ¶ 35.) Stover disagrees that the jail has a policy in place concerning inmate hygiene because inmates on his pod had to eat in their cells when the water had been turned off and they could not flush their toilets. (Doc. 43 at ¶ 34.)

Stover claims that he suffered a rash when the colostomy bag leaked onto his skin. Nurse McDonald gave him triple antibiotic ointment for the rash. (Doc. 43 at ¶ 36.) Stover claims that it was necessary for him to use the booking room bathroom to clean out his colostomy bag because when he cleaned it out in his cell, the other inmates complained about the smell. Stover

AO72A
(Rev. 8/82)

did have access to a toilet in his cell through which he could empty his colostomy bag, and he was permitted to flush his cell as often as the other inmates on his pod were permitted to flush their toilets. (Doc. 43 at ¶¶ 36-39.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. Discussion

<u>Deliberate Indifference to Serious Medical Needs</u>

In this case, the plaintiff was a pretrial detainee. Thus, his claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth

-5-

Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate*

AO72A
(Rev. 8/82)

*of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

Here, plaintiff has failed to show that there is a genuine issue of material fact as it

AO72A
(Rev. 8/82)

pertains to the treatment he received for his colostomy bag. While plaintiff preferred to empty his colostomy bag in the booking room bathroom because the smell did not bother other inmates, it was not necessary for him to do so, and he had access to a toilet in his own cell that he could use to empty the colostomy bag. Nurse McDonald was not deliberately indifferent to plaintiff's medical condition because she one time supplied plaintiff with the wrong-sized colostomy bags. Plaintiff acknowledges that after he discovered that the bags were not the proper size, he received the correct bags within three days. Providing the incorrect bags was nothing more than negligence on the part of Nurse McDonald. Further, plaintiff states that when he suffered a rash because the bag broke open and leaked on him, Nurse McDonald provided treatment in the form of triple antibiotic ointment. Merely not being permitted to change his colostomy bag at Stover's preferred times and places does not state a claim of deliberate indifference to his serious medical needs. Defendants should be granted summary judgment on this issue.

Refusal to Move to General Population

Stover also claims that defendants refused to move him general population at his request, and that he remained in administrative segregation/protective custody while at the BCDC. Pretrial detainees are presumed innocent and may not be punished. *See Bell v. Wolfish*, 441 U.S. 520, 535 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The determination whether a particular restriction or condition accompanying pretrial detention is punishment turns on whether the restriction or condition is reasonably related to a legitimate governmental objective. *Id.* Here, Lt. Carter explained to Stover that he would remain on protective custody throughout his time at the BCDC for the safety and security of the facility. It is clear that Stover had previously had

problems with inmates at the BCDC, and due to his medical condition and his own admission that as he emptied his colostomy bag that other inmates would complain, it was reasonable for Lt. Carter to decide to keep Stover on protective custody. There is no evidence to suggest that this decision was any form of punishment, rather it was related to a legitimate governmental objective. Defendants should be granted summary judgment on this issue.

Official Capacity Claims

In his complaint and addendum, Stover does not state in what capacity--official and/or individual--he is suing defendants. Defendants assert that the plaintiff is bringing only official-capacity claims and has failed to show that his alleged constitutional violations occurred as a result of a policy or custom of the Benton County Detention Center. The plaintiff agrees that he is suing defendants only in their official capacities, however he states that the jail does not have a policy in place concerning inmate hygiene because inmates on his pod had to eat in their cells when the water had been turned off and they could not flush their toilets. Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these

-9-

AO72A
(Rev. 8/82)

claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman*, 152 F.3d at 914 (citations omitted).

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *see also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999) (in actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995) ("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint not a statement made in response to a motion to dismiss is sufficient").

While the court has an obligation to construe a pro se complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), this requirement that individual-capacity claims be specifically pled has been applied to pro se litigants. *See Taylor v. Roper*, 53 Fed. Appx. 142 (8th Cir. 2003) (unpublished per curiam) (*citing Murphy v. Arkansas*, 127 F.3d 750, 754-55 (8th Cir. 1997) (Eighth Circuit strictly enforces this pleading requirement)).

Defendants asserted that plaintiff was only bringing official capacity claims, and in response to this assertion, plaintiff agreed. As noted above, official capacity claims are the equivalent of claims asserted against the employing entity--here Benton County. Under section 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. A governmental entity, however, may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional custom or policy. *See Doe v. Washington Co.*, 150 F.3d 920, 922 (8th Cir. 1998). Plaintiff does not indicate what county policy led to his alleged Constitutional deprivation, and further, a custom of controlling the water to a pod that experienced frequently flooding by the inmates does not in itself establish an unconstitutional county custom. *See Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (Constitution does not mandate comfortable prisons). Therefore, plaintiff has only raised official capacity claims against defendants and has failed to establish that his constitutional rights were violated due to a Benton County custom or policy.

## IV. Conclusion

I therefore recommend that the defendants' motion for summary judgment (Doc. 38) be granted, and this case be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

AO72A
(Rev. 8/82)

DATED this 31st day of May 2006.

**/s/ Beverly Stites Jones**
_____
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**